## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISON

| | |
|---|---|
| **LEEAARON HENSLEY,** individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br>**v.**<br><br>**AMERICA'S PIZZA COMPANY, LLC, d/b/a PIZZA HUT; ADT PIZZA, LLC, d/b/a PIZZA HUT; BRENT STOLZENTHALER; and ADAM DIAMOND**,<br><br>Defendants. | **Case No. 4:21-cv-2**<br><br>**Jury Demanded**<br>**Complaint – Collective Action** |

### COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

Plaintiff LeeAaron Hensley ("Plaintiff"), individually and on behalf of all other similarly situated persons, brings this Complaint against Defendants America's Pizza Company, LLC, d/b/a Pizza Hut, ADT Pizza, LLC, d/b/a Pizza Hut, Brent Stolzenthaler, and Adam Diamond, and alleges as follows:

1.      Defendants operate numerous Pizza Hut pizza franchise stores. Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers. However, instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants use a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any reasonable approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks.

2.      Plaintiff LeeAaron Henley brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* to recover unpaid minimum wages owed

to himself and similarly situated delivery drivers employed by Defendants at their Pizza Hut stores.

## I.      JURISDICTION AND VENUE

3.      The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1332 (diversity).

4.      Venue in this District is proper under 28 U.S.C. § 1391 because Defendants do business in this District; Plaintiff resides within the District; and the events giving rise to this lawsuit occurred within the District.

## II.     PARTIES

5.      Defendant, America's Pizza Company, LLC, d/b/a Pizza Hut ("APC"), is a Louisiana limited liability company maintaining its principal place of business at 1308 Camellia Blvd., Suite 200, Lafayette, Louisiana 70508.  APC may be served with process via its Texas registered agent, L. Shane Stokes, 300 N. Marienfeld, Suite 700, Midland, Texas, 79701, or wherever it may be found.

6.      Defendant ADT Pizza, LLC, d/b/a Pizza Hut ("ADT Pizza"), is a Delaware limited liability company maintaining its principal place of business at 20 Ketchum Street, Westport, Connecticut 06880.  ADT owns more than 120 Pizza Hut franchise locations, employing approximately 3,000 people in at least five states – including Texas, Louisiana, North Carolina, South Carolina, and Ohio.  ADT may be served with process via its Texas registered agent, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.      Defendant Brent Stolzenthaler is individually liable because, during the relevant times, he was an owner of substantial interests in Defendant APC, served as officer of the entity, held managerial responsibilities and substantial control over terms and conditions of drivers' work

as he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records. Defendant Stolzenthaler may be served 1308 Camellia Blvd., Suite 300, Lafayette, Louisiana 70508, or wherever he may be found.

8.      Defendant Adam Diamond is individually liable because, during the relevant times, he was an owner of substantial interests in Defendant ADT Pizza served as officer of the entity, and held managerial responsibilities and substantial control over terms and conditions of drivers' work as he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records. Defendant Diamond may be served at 45 Red Coat Road, Westport, Connecticut 06880, or wherever he may be found.

9.      Plaintiff LeeAaron Hensley is a resident of Kermit, Texas. He was employed by Defendants from 2016 to 2018 as a delivery driver at Defendants' Pizza Hut store in Kermit, Texas. His consent to pursue this claim under the FLSA is attached to this Original Complaint as Exhibit 1.

## III.      SUCCESSOR INTEREST AND LIABILITY

10.      Upon information and belief, Defendant APC has transferred all, or a portion, of its interest in certain Pizza Hut franchise stores to ADT Pizza.

11.      Upon information and belief, Defendants continue to operate Pizza Hut franchise stores in at least five states, including stores in this State and in this District.

12.      Defendant ADT Pizza and its named officers are liable hereunder in their own

right and as successor-in-interest to APC.

13.     No allegation herein is intended to lessen or alleviate the liability of any Defendant.

## IV.     GENERAL ALLEGATIONS

### *Defendants' Business*

14.     Defendants own and operate approximately 130 Pizza Hut franchise stores in at least five states – including stores in this State and in this District – and they employ approximately 3,000 people.

15.     The Kermit, Texas Pizza Hut where Plaintiff worked is one of the highest grossing stores in its region.

16.     Brent Stolzenthaler is the director of corporate Defendant APC.  Adam Diamond is the chief executive officer of corporate Defendant ADT Pizza.

17.     In their respective capacities as officers of the corporate Defendants, Brent Stolzenthaler and Adam Diamond put the pay scheme at issue in place, and they have both overseen and enforced Defendants' pay practices.  They are, therefore, individually liable for the violations at issue.

18.     Defendants' Pizza Hut stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

### *Defendants' Flawed Automobile Reimbursement Policy*

19.     Defendants require their delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

20.     Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses")

while delivering pizza and other food items for the primary benefit of Defendants.

21.     Defendants' delivery driver reimbursement policy reimburses drivers on a per-delivery basis, but the per-delivery reimbursement equates to below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendants' delivery drivers.

22.     The result of Defendants' delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of its drivers' automobile expenses.

23.     During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.54 and $.545 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $.571 and $.608 per mile during the same period for drivers who drive 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

24.     However, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

25.     Defendants' reimbursement policy does not reimburse delivery drivers for even

their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly failed to reimburse its delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

26.     Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages it pays to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

27.     Defendants fail to reasonably approximate the amount of their drivers' automobile expenses to such an extent that its drivers' net wages are diminished beneath the federal minimum wage requirements.

28.     In sum, Defendants' reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

### *Defendants' Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations*

29.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

30.     During his employment with Defendants, Plaintiff was paid between $7.50 and $10.50, while out on delivery and in the store.

31.     The Federal minimum wage has been $7.25 per hour since July 24, 2009.

32.     During the time Plaintiff worked for Defendants as a delivery driver, he was not reimbursed for mileage, and on average drove 3-4 miles per delivery.

33.      During the relevant time period, the IRS business mileage reimbursement rate

ranged between $.54 and $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Due to Plaintiff's automobile expenses, every mile driven on the job decreased his net wages to an amount below the federal minimum wage.

34.     During his employment by Defendants, Plaintiff regularly made 3 or more, and on some days at least 10, deliveries per hour. Thus using even a conservative under-estimate of Plaintiff's actual expenses and damages, every hour on the job decreased Plaintiff's net wages to an amount below the federal minimum wage.

35.     All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

36.     Because Defendants paid their drivers a gross hourly wage at or close to, the state and federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

37.     While the amount of Defendants' actual reimbursements per delivery may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other Pizza Hut stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

38.     Defendants' low reimbursement rates were a frequent complaint of Defendants'

7

delivery drivers, which resulted in discussions with management, yet Defendants continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses.

39.     The net effect of Defendants' flawed reimbursement policy is that Defendants have willfully failed to pay the federal minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of their employees.

## V.     COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiff brings the above captioned lawsuit as a collective action on behalf of himself and as the Class Representative of all current and former delivery drivers employed by the Defendants during the last three years (the "Class").

41.     Plaintiff brings Count I (FLSA) as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

42.     The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

43.     Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendant's practice of failing to pay employees federal minimum wage. The number and identity of other Plaintiffs yet to opt-in may be ascertained from Defendant's records, and potential class members may be notified of the pendency of this action via mail and electronic means.

44.     Plaintiff and all of Defendants' delivery drivers are similarly situated, and have similar claims, in that:

      a.   They have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b. They have delivered pizza and food items using automobiles not owned or maintained by Defendants;

c. Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d. They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of Defendants;

g. They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. They were reimbursed similar set amounts of automobile expenses per delivery; and

i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

45. The Class satisfies the numerosity standard as it consists of hundreds of persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

46. Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

a. Whether Defendants failed to pay Class members the minimum wage required by

Federal law;

b.  Whether Defendants failed to reasonably reimburse Class members for using their own vehicles to deliver Defendants' pizzas and other food items;

c.  Whether Defendants' formula and/or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the Class members; and

d.  Whether Defendants failed to keep accurate records of deductions from Class members' wages in violation of Federal law.

47.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the class claims.

48.     A collective action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Class.

49.     Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interest of the members of the Class he seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and collective action litigation.

50.     Maintenance of this action as a collective action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate collective actions, no other

litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a collective action.

51.     It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single collective action can determine, with judicial economy, the rights of all Class members.

## VI.     CAUSES OF ACTION

### Count I: Violation of the Fair Labor Standards Act of 1938

52.     Plaintiff reasserts and re-alleges the allegations set forth above.

53.     Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of similarly situated persons pursuant to 29 U.S.C. § 216(b).

54.     The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

55.     Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage.  The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

56.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production

of goods for commerce. 29 U.S.C. §206(a).

57.     Defendants are subject to the FLSA's minimum wage requirements because they are enterprises engaged in interstate commerce, and their employees are engaged in commerce.

58.     At all relevant times herein, Plaintiff and all other similarly situated persons have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, et seq.

59.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated persons.

60.     Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

61.     As alleged herein, Defendants have reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the Federal minimum wage.

62.     Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the Federal minimum wage.

63.     Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay Federal minimum wage to Plaintiff and other similarly situated persons.

64.     Plaintiff and all similarly situated persons are victims of a uniform and employer-based compensation and reimbursement policy.  This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants'

stores.

65.     Plaintiff and all similarly situated persons are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

66.     Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result,  Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants are not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

67.     As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post- judgment interest, reasonable attorneys' fees, and costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Putative Plaintiffs collectively pray that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA and designate the above Plaintiff as representative of all those similarly situated under the FLSA collective action;

2. Award Plaintiff and the Putative Plaintiffs actual damages for unpaid wages and liquidated damages equal in amount to the unpaid compensation found due to Plaintiff and the class as provided by the FLSA, U.S.C. § 216(b);

3. Award Plaintiff and the Putative Plaintiffs pre- and post-judgment interest at the statutory rate as provided by the FLSA, U.S.C. § 216(b);

4. Award Plaintiff and the Putative Plaintiffs' attorneys' fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. § 216(b); and

5. Award Plaintiff and the Putative Plaintiffs further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Dated: January 8, 2021                                    Respectfully submitted,

                                                          **FORESTER HAYNIE PLLC**

                                                          /s/ *M. Mathews*_____
                                                          **Meredith Mathews**
                                                          Texas Bar No. 24055180
                                                          400 N. St. Paul St., Suite 700
                                                          Dallas, TX 75201
                                                          (214) 210-2100 phone
                                                          (214) 346-5909 fax
                                                          mmathews@foresterhaynie.com

                                                          /s/ *Joe P. Leniski Jr.*_____
                                                          Joe P. Leniski, Jr.* (TN BPR #022891)
                                                          **BRANSTETTER, STRANCH &**
                                                          **JENNINGS, PLLC**
                                                          223 Rosa Parks Ave. Suite 200
                                                          Nashville, TN 37203
                                                          Telephone: 615/254-8801
                                                          Facsimile: 615/255-5419
                                                          Email: joeyl@bsjfirm.com

                                                          **pro hac vice* application forthcoming

14